## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHONE EDWARD HANDSHAW | § | PLAINTIFF |
| | § | |
| v. | § | Civil Action No.1:14v304 JCG |
| | § | |
| RICHARD HILLIARD & | § | DEFENDANTS |
| BRANDON FRANOVICH | § | |

### MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION TO DISMISS, OR IN  THE ALTERNATIVE, FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

BEFORE THE COURT is the Motion [38] to Dismiss, or in the alternative, for Summary Judgment filed February 16, 2015, by Richard Hilliard and Brandon Franovich, ["Defendants"] together with a Response [76] filed by Shone Edward Handshaw ["Plaintiff"].  The Court, having considered the pleadings on file, the briefs and arguments of the parties, and relevant legal authorities, finds that Defendants' Motion for Qualified Immunity should be granted for the reasons that follow.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

This case originates from events surrounding Plaintiff's arrest by Defendants, both police officers employed by the Biloxi Police Department.  The Court has been presented with two varied backgrounds and two different sets of facts which undergird this action.   According to Plaintiff's Complaint, during the late evening of December 3, 2013, and through the early morning hours of December 4, 2013, he was "approached by two Biloxi police officers [on foot] at 294

Main Street in Biloxi, Mississippi." Compl. [1] at pp. 4-4.   Plaintiff claims that Officer Franovich "ordered him to the ground with his pistol drawn, while I had my hands in the air trying to figure out what the problem was." Id.   Plaintiff further alleges that Officer Hilliard attacked him from behind by delivering strikes with a flashlight, and placed him in a choke hold.   Plaintiff further claims that thereafter, both officers forced him to the ground. Id.   Plaintiff was placed in handcuffs.   At that point, Officer Hilliard then proceeded to conduct a search incident to Plaintiff's arrest.   Hilliard discovered a clear plastic bag with several off white rock substances in Plaintiff's front pant pocket. Affidavit of Richard Hilliard [38-2], att. as Ex. "B" to Defs.' Mot; Affidavit of Richard Franovich [38-3], att. as Ex. "C" to Defs.' Mot.  Plaintiff was transported, booked, and charged with Possession of a Controlled Substance with Intent, Resisting Arrest, and Careless Driving.

Plaintiff was indicted, during the February 2014 term, on the possession with intent charge in violation of MISS. CODE ANN. § 41-29-139(a)(1).  Indictment [76-1] att. as Ex. "A" to Pl.'s Resp. to Defs.' Motion.

On August 6, 2014, Plaintiff filed his Complaint [1] in this Court for damages against Defendants.   Plaintiff asserts violation of his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.   Compl. [1], at p. 4.  Specifically, Plaintiff alleges that Defendants used excessive force in effectuating his arrest; Defendants conducted an illegal search and seizure of his person; and he was subjected to false arrest at the hands of Defendants.   Plaintiff claims he was "falsely accused" and seized without probable cause.  Id. at p. 4.

On December 18, 2014, an Omnibus Hearing was conducted wherein the Court heard additional factual background from the Plaintiff.  Following the hearing, a Scheduling Order was entered in order for the parties to conduct discovery and file motions on the issue of qualified immunity.  Upon consent, on December 19, 2014, an Order [27] was entered reassigning the above captioned cause.

On February 2, 2015, Plaintiff entered a plea of guilty to a reduced straight possession charge in the Harrison County Circuit Court.  According to Defendants, following Plaintiff entering his guilty plea, the careless driving and resisting arrest charges were passed to the file.  On February 3, 2015, following Plaintiff's entry of a guilty plea, the Harrison County Circuit Court entered a Judgment of Conviction. Plaintiff was sentenced to serve "two [2] years to run consecutive to the Defendant's sentence in Greene County Cause No. 21-10-10015[1] in the custody of the Mississippi Department of Corrections."  Judgment [38-5], p.2, att. as Ex. "E" to Defs.' Motion [38].  The record does not reflect whether Plaintiff has appealed or filed a motion for post-conviction relief.[2]

---

[1]During the omnibus hearing, Plaintiff testified that on December 3, 2013, he was on probation for a prior drug offense, namely possession of marijuana within the MDOC prison system.  Plaintiff was in MDOC custody for possession of a controlled substance at the time he was charged with possession of marijuana.  Tr. of Omnibus Hearing [38-4] at pp. 10-11, 36, att. as Ex. "D" to Defs.' Mot. [38].

[2]On July 12, 2015, Plaintiff filed for a Writ of Mandamus with the Mississippi Supreme Court [M# 2015-2958]. The Mississippi Supreme Court denied Plaintiff's Motion on August 12, 2015 [M# 2015-2958, Serial 200444].

Defendants filed the instant Motion [38] on February 16, 2015.  The docket reflects that on February 18, 2015, a Change of Address [40] was filed by the Plaintiff.   A second Change of Address [46] was filed by Plaintiff on March 5, 2015.  On May 29, 2015, the Court issued an Order [54] to Show Cause. The Order granted Plaintiff additional time until June 8, 2015, to file a response to Defendants' Motion [38] to Dismiss, or, alternatively, for Summary Judgment, or to show good cause for his failure to respond to Defendants' Motion.   A copy of the Court's Order [54] was mailed to Plaintiff's address of record.   That same day, Plaintiff filed a third Change of Address [55].   Accordingly, the Court on June 9, 2015, issued another Order [56] to Show Cause and mailed it to Plaintiff's address of record.   On June 10, 2015, Plaintiff filed a fourth Change of Address [57], and as such, the Court issued yet another Order [58] to Show Cause on June 11, 2015.   An Acknowledgment of Receipt was docketed on June 17, 2015, documenting Plaintiff's receipt of the Court's Order.   Thereafter, Plaintiff requested additional time to file a response to Defendants' Motion, which the Court granted by a text only order entered on June 22, 2015.   On June 22, 2015, and again on June 26, 2015, Plaintiff filed additional Changes of his Address [64], [66].    On July 6, 2015, Plaintiff filed a Motion [75] to Strike his previously filed Motion for Time to file Response, which the Court granted on July 7, 2015.   Plaintiff filed a timely Response [76]  to Defendants' Motion on July 10, 2015.

## II. DISCUSSION

A.   Plaintiff's Illegal Search & Seizure Claim, False Arrest Claims & *Heck v. Humphrey*

Defendants assert that Plaintiff's § 1983 claims are barred by *Heck v.*

*Humphrey,* 512 U.S. 477 (1994).

> Plaintiff was convicted of possession of a controlled substance under Miss. Code Ann. § 41-29-139. Exhibit "F."   While Plaintiff was also initially charged with resisting arrest and careless driving, such charges were passed to the file after Plaintiff was convicted under Miss. Code Ann. §41-29-139. Plaintiff's conviction for possession of a controlled substance has not been reversed expunged, or otherwise called into question. If Plaintiff were to succeed in his § 1983 claims, such determination would be "inherently inconsistent" with the State of Mississippi's conviction of possession of a controlled substance under Miss. Code Ann. § 41-29-139. *Bush v. Strain*, 513 F. 3d492, 497 (5th Cir. 2008). Accordingly, Plaintiff's § 1983 claims are barred by *Heck* as Plaintiff's conviction has not been found to be invalid.

Defs.' Mem. in Support [39] of Mot. for Summ. J. [38] at pp. 10-11.

Plaintiff claims that he was unlawfully seized because there was no probable

cause or warrant and because "his initial stop was illegal and the subsequent arrest

. . . was fruit of the poisonous stop, traffic, stop, arrest, search and seizure in

violation of Plaintiff's Constitutional rights."  Pl.'s Resp. [76] at p. 2.

In *Heck v. Humphrey*, the Supreme Court held that:

> [i]n order to recover damages for . . . other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must  consider  whether  a  judgment  in  favor  of  the  plaintiff  would

necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

"The *Heck* analysis . . . does not make an inquiry to the validity of the plaintiff's claims, but, rather, considers whether they are inconsistent with a prior criminal conviction." *Jenkins v. Town of Vardaman, Miss.,* 899 F.Supp.2d 526, 532 (N.D. Miss. Oct. 22, 2012).

It is apparent from the record that to date, Plaintiff's possession conviction has not been reversed, expunged, or otherwise called into question. The determination of whether Plaintiff's § 1983 claims are barred by *Heck* requires an analysis of whether success on those claims "requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain,* 513 F.3d 492, 497 (5th Cir. 2008).

In analyzing Plaintiff's Fourth Amendment argument, it is apparent that he seeks to prove that his arrest lacked probable cause. This is inapposite with *Heck*. In order to prevail, Plaintiff would need to "negate an element of the offense for which [he] was charged," namely that he was lawfully arrested, *Heck,* 512 U.S. at 487 n.6. Plaintiff's requested relief pursuant to §1983 if granted, necessarily implies the invalidity of his criminal possession conviction. As stated above, said conviction has not been reversed or otherwise lawfully set aside. As such, Plaintiff's Fourth

Amendment claims are barred by *Heck.  See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995); U.S.C.A. Const.Amend. 4; *see also Ickes v. Grassmeyer*, 30 F. Supp. 3d 375 (W.D. Pa. 2014)(determination that police officer did not have probable cause to stop arrestee's vehicle or arrest him would necessarily imply invalidity of his state convictions for violating traffic laws and for resisting arrest . . . therefore . . . § 1983 claims alleging that stop of his vehicle violated the Fourth Amendment were precluded, pursuant to *Heck v. Humphrey*, by his state convictions.)

"Any §1983 claim, which attacks the unconstitutionality of a conviction (or imprisonment, as the case may be), does not accrue until that conviction (or sentence) has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Wells v. Bonner,* 45 F.3d 90, 94 (5th Cir.1995) (quoting *Heck v. Humphrey,* 512 U.S. 477, 486 (1994)).

Regarding Plaintiff's false arrest claim, the Court finds it should likewise be dismissed as *Heck* barred.  The record in this case is clear that if Defendants' stop of Plaintiff, the occurrences surrounding his being taken into custody, and the subsequent search incident to arrest [which revealed the drugs that were essential to the criminal charge] were determined unconstitutional by this Court in this § 1983 action, such a holding would cast into doubt or potentially invalidate Plaintiff's drug possession charge.  Therefore, Plaintiff's false arrest claim is barred

by *Heck*.

B.    <u>Plaintiff's Excessive Force Claim & *Heck v. Humphrey*</u>

Next the Court must determine whether Plaintiff's excessive force claim is likewise barred by *Heck*. "Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring us to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008).

There are several decisions by the Fifth Circuit which indicate that *Heck's* favorable termination rule generally bars excessive force claims where the plaintiff has been convicted of resisting arrest. *Daigre v. City of Waveland, Miss.,* No. 1:10-cv-00568-LG-RHW, *20 (S.D. Miss. Sept. 24, 2012)(collecting cases). However, in the present case, Plaintiff pleaded guilty to the possession charge and he was not prosecuted on the charges of resisting arrest and careless driving.

It is the opinion of the undersigned that Plaintiff's excessive force claim is "temporally and conceptually distinct" and does not necessarily imply the invalidity of his underlying possession conviction. *See Bush,* 513 F.3d at 499.   Therefore, Plaintiff's excessive force claim is not barred by *Heck. See Easterling Logazine,* 2011 WL 213472 at *1 (S.D. Miss. Jan. 21, 2011).

C.     Plaintiff's Excessive Force Claim & Qualified Immunity

1.     Standard of Review

When a plaintiff names a police officer in his individual capacity, the plaintiff is seeking "to impose personal liability upon [the officer] for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).[3] The defense of qualified immunity is available to an official sued in his individual capacity. *Id.* at 166-67.  Qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known.  *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir. 2006).  "A qualified immunity defense alters the usual summary judgment burden of proof."  *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law."  *Id.*  "The plaintiff bears the burden of negating qualified immunity, but all inferences are drawn in his favor."  *Id.*

The qualified immunity analysis involves a two prong inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether that

---

[3]When a plaintiff names an official in his official capacity, it is the equivalent of naming the government itself as the defendant, and requires the plaintiff to prove an official policy or custom as the cause of the constitutional violation. *Graham,* 473 U.S. at 165.

right was clearly established at the time of the alleged misconduct. *Pearson* v.

*Callahan*, 555 U.S. 223, 232 (2009). It is within the discretion of the district court

to decide which of the two prongs of the qualified immunity analysis to address

first. *Id.* at 236. Determining qualified immunity is "a question of law for the

court, not a matter of fact for the jury." *Brown,* 623 F.3d at 253 (5th Cir. 2010).

Whether an official may be "held personally liable for an allegedly unlawful action

generally turns on the objective legal reasonableness of the action, assessed in light

of the legal rules that were clearly established at the time it was taken."

*Messerschmidt v. Millender,* 132 S. Ct. 1235, 1245 (2012)(internal citations

omitted). "The calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments – in circumstances

that are tense, uncertain, and rapidly evolving – about the amount of force that is

necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 396-97

(1989). The reasonableness inquiry is objective and does not take into account a

police officer's underlying intent or motivation. *Id.* at 397. The Court should

consider "the severity of the crime at issue, whether the suspect poses an immediate

threat to the safety of the officers or others, and whether he is actively resisting

arrest or attempting to evade arrest by flight." *Id.* at 396. "An official's actions

must be judged in light of the circumstances that confronted him, without the

benefit of hindsight." *Brown,* 623 F.3d at 253. "[A] plaintiff must allege conduct

which 'shocks the conscience.'" *Murray v. Earle*, No. 06-50568, 2008 WL 1744257, *5

(5th Cir. 2008)(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994)(quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown,* 623 F.3d at 253.

2.  Analysis of Plaintiff's Excessive Force Claim

The Court, mindful of this standard, has a record before it with numerous inconsistencies regarding the circumstances leading up to, encompassing, and following Plaintiff's arrest. The Court construes all relevant disputed material facts in the light most favorable to Plaintiff. *Scott v. Harris,* 550 U.S. 372, 377 (2007).

Plaintiff claims that both Defendants used excessive force upon him even though he was not resisting arrest, and that they both utilized an unreasonable amount of force that was unnecessary to subdue him. Plaintiff's Complaint states that Franovich "ordered me to the ground with his pistol drawn, while I had my hands up in the air trying to figure out what the problem was, his partner Hilliard attacked me from behind by delivering strikes with his flashlight, putting me in a choke hold, and both officers forced me to the ground." Compl. [1] at pp. 5-6.

During the omnibus hearing, Plaintiff was questioned about the events surrounding the night of his arrest and his testimony provided the Court with additional details and information. According to Plaintiff, on the night of December

3, 2013, he was playing pool at an establishment in downtown Biloxi. After receiving a phone call from his girlfriend, Plaintiff went outside to her car to speak with her.  According to Plaintiff, his girlfriend was there to pick him up and wanted him to leave, however, he informed her that he was in the middle of a game and was not ready to leave. Plaintiff further testified that after his girlfriend got out of the vehicle and went inside to use the restroom, he grabbed her keys from on top of the console, locked the car, and was proceeding to go inside.

Plaintiff stated that while he was making his way back inside from the parking lot, he was approached by two police officers, one with a weapon drawn, and the other from behind him.  He further testified that it was dark, he was unable to see what was going on or what the problem was, and he therefore asked Defendants why he had to get on the ground.  Tr. of Omnibus Hearing [38-4] at pp. 9-11, 18-20 att. as Ex. "D" to Defs.' Mot. [38].   He further testified that while one officer held a gun at him, the other approached him from behind and struck him from behind with a flashlight.   Plaintiff was then forced to the ground. *Id*. at p. 13.

Plaintiff testified that he was hit three or four times. He described his arrest as follows:

> the first time he hit me, I didn't fall. Then he hit me again and grabbed me around my neck. Then the last thing I know -- because he was grabbing me around my neck and choking me. I tried to put my hands up to try to get some air, but I couldn't hardly get my hands up, and all I could see was the first officer putting his gun up and coming towards me. So we was, like, kind of struggling because I wasn't just getting thrown down on the ground. So both of them together slapped me down on the ground, and they continued to hit me and tell me, *Stop resisting, stop resisting*.  I got hit in the back, the knee in the back, punched in the back

of the head. When I was down on the ground, I can't really tell what was hitting me because I was trying to get up.

Tr. of Omnibus Hearing [38-4] at pp. 45-46, att. as Ex. "D" to Defs.' Mot. [38].

Plaintiff also testified that he was not the person driving the vehicle, it was his girlfriend Crystal Williams who was driving the car in order to pick him up. Tr. of Omnibus Hearing [38-4] at p. 13, att. as Ex. "D" to Defs.' Mot. [38]. Plaintiff testified that there was talk inside the pool hall of Biloxi police officers being parked outside near Inez's place in order to run names on outstanding warrants. *Id.* at p. 43. Plaintiff testified that at the time he was arrested, he had no recollection of the officers finding cocaine on his person due to being struck in the back of the head. He later testified that he plead guilty to the possession charge. Tr. of Omnibus Hearing [38-4] at pp. 36-38, att. as Ex. "D" to Defs.' Mot. [38].

The Affidavit of Richard Hilliard, submitted in support of the instant Motion, states in part as follows:

> On the night of December 3, 2013, I observed a Chevrolet Malibu speeding well above the posted speed limit. I observed the vehicle then turn into the parking lot of Inez Lounge on 294 Main Street in Biloxi. Once the vehicle entered the parking lot, the driver exited the vehicle in attempt to flee from Officer Franovich and I. Officer Franovich and I followed in separate directions on foot. Before I saw the driver, I heard Officer Franovich yelling at the driver to "show his hands." By the time I reached the driver, Shone Handshaw, Officer Franovich had drawn his sidearm. Both Officer Franovich and I ordered Mr. Handshaw to put his hands up and get on the ground multiple times. Mr. Handshaw refused to comply with our orders. Officer Franovich attempted to force Mr. Handshaw to the ground but Mr. Handshaw continually resisted arrest, I ordered Mr. Handshaw to stop resisting and to lay on the ground. After Mr. Handshaw refused my orders and continued to resist arrest, I struck him twice in the outer thigh area in order to place Mr. Handshaw into handcuffs. After searching Mr. Handshaw incident to his arrest, I

recovered 2.2 grams of a rock like substance, later identified as cocaine. At all times material, I believed that Mr. Handshaw had committed a traffic violation in my presence. . . . [and] I was acting within the course and scope of my employment as an Officer of the Biloxi Police Department.

Aff. of Richard Hilliard, [38-2] att. as Ex. "B" to Defs.' Mot. [38].

The Affidavit of Brandon Franovich, also submitted in support of the instant

Motion, states in part as follows:

On or about December 3, 2013, I observed a Chevrolet Malibu speeding well above the posted limit . . . then turn into the parking lot of Inez Lounge on 294 Main Street in Biloxi. Once the vehicle entered the parking lot, the driver exited the vehicle in attempt to flee from Officer Hilliard and I. Officer Hilliard and I followed the driver in separate directions on foot. When I first reached the driver, Shone Handshaw, he was crawling through some bushes and I ordered him to stop. As I was giving Mr. Handshaw commands to stop, he stood up and put his hands on the front side of his pants. Fearing Mr. Handshaw was armed, I drew my sidearm and ordered Mr. Handshaw to put his hands up and get on the ground several times. After Mr. Handshaw repeatedly ignored my orders, I attempted to force Mr. Handshaw to the ground but Mr. Handshaw resisted arrest.   Officer Hilliard and I both ordered Mr. Handshaw to stop resisting arrest and to lay on the ground. After Mr. Handshaw refused our orders and continued to resist arrest, Officer Hilliard struck him in the outer thigh with his flashlight so that Mr. Handshaw could be placed in handcuffs.
At all times material, I believed that Mr. Handshaw had committed a traffic violation in my presence. . . . [and] I was acting within the course and scope of my employment as an Officer of the Biloxi Police Department

Aff. of Richard Hilliard, [76-2] att. as Ex. "B" to Defs.' Mot.

Plaintiff admitted that he was noncompliant of Officer Franovich's directives to get down on the ground. The record before the Court includes Plaintiff's responses to the written discovery propounded by Defendants.   Plaintiff "admits" that he:

(1) ignored the instructions by Defendant to get on the ground;
(2) refused to get on the ground;
(3) Defendant Franovich's conduct during the incident was discretionary;
(4) Defendant Hilliard's conduct during the incident was discretionary;
(5) no witnesses observed the incident in question other than Plaintiff and Defendants.

Resp. to Requests for Admissions [38-6], pp. 1, 3 att. as Ex. "F" to Defs.' Mot. [38].

In support of his Response, Plaintiff attached two incident reports prepared by Richard Hilliard and Brandon Franovich. Plaintiff points to certain conflicts contained in these reports.  According to Hilliard's report:

> On the night of December 3, 2013, he and Officer Brandon Franovich were parked across from 294 Main Street and observed a Chevrolet Malibu traveling at an excessive rate of speed.   They began pursuit in order to initiate a traffic stop, the driver turned erratically, and turned into the parking lot of 294 Main.   Hilliard states that when they got to the vehicle it was empty and he observed Handshaw running behind Inez.    He informed Officer Brandon Franovich that Plaintiff was running, they divided up, and when he turned the corner, he observed Franovich with his weapon drawn on Plaintiff and Plaintiff with his hands in the air. According to Hilliard, they ordered Plaintiff to get on the ground multiple times and he refused. He further states that he "delivered two strikes to his common peroneal [left outer thigh area] with my flashlight at which time he rolled over onto his stomach.

Incident Report, Richard Hilliard, [76-2] att. as Ex. "B" to Pl.'s Resp. [76] to Defs.' Mot. [38].

The incident report prepared by Brandon Franovich states as follows:

> On 12-03-2013 at around 2353 hours, I responded to the area of Main and Division St to assist Officer Hilliard serve a warrant. While on the scene . . .we noticed a silver vehicle driving north . . . at a high rate of speed. As we attempted to pull out and conduct a traffic stop . . . the suspect rapidly slowed, pulled into the north parking lot of 294 Main St. As Officer Hilliard and I approached the vehicle, Officer Hilliard  advised the suspect later identified as Brian Keith Williams was running around the building. . . . As I made it around the building, I noticed Williams

crawling through the bushes . . . and I then ordered him to stop. As I was giving several loud verbal commands for him to stop, he stood up and put his hands in the front side of his pants.  I then drew my sidearm, pointed it at Williams and began giving loud verbal commands for him to stop and show me his hands.   At this time he still did not comply, I then grabbed Williams and forced him to the ground as Officer Hilliard arrived and assisted me.

Once on the ground Williams continued to struggle . . . After a brief struggle . . . where [sic] able to place Williams in handcuffs. Once in handcuffs, Hilliard began a search incident to arrest.   . . . As Hilliard began to search his right front pants pocket, Williams began resisting again.  Once Williams was under control Hilliard was able to locate a small clear bag containing several small off white rock like substance.

Once at the station, Williams continued to be uncooperative . . . he was then placed in the holding cell where he continued to be verbally combative.

Incident Report, Brandon Franovich [76-3] att. as Ex. "C" to Pl.'s Resp. [76] to Defs.' Mot. [38].

The Court has examined both reports and the exhibits tendered by Plaintiff and indeed they contain inconsistencies.  However, the determination of qualified immunity does not turn on these facts and they are not deemed material to the analysis. *See Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 408-09 (5th Cir. 2009) (citing *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 483 (5th Cir. 2001) and *Estate of Starks v. Enyart*, 5 F.3d 230, 232–33 (7th Cir.1993)).

In order to determine whether the force used by officers is unreasonable, the Fourth Amendment prescribes a case-specific balancing exercise in which "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest ..." all play a part. *Graham v. Connor,* 490 U.S. 386 (1989).  The Court in *Graham* explains the

necessary perspective in evaluating the use of force:

> The Fourth Amendment, with its standard of reasonableness, governs claims of excessive force during arrest.  The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight .... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham v. Connor,* 490 U.S. 386, 396–97 (1989).

> Further, only the objective reasonableness of force matters for Fourth Amendment purposes—an officer's subjective motivation and intent are irrelevant. *Id.* at 397, 109 S.Ct. 1865. The court must measure the force used under the facts as a reasonable officer would perceive them, not necessarily against the historical facts. *See Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991) (finding no Fourth Amendment violation where an officer shot and killed an unarmed suspected who the officer reasonably believed to be armed). For that reason, when reviewing a grant of summary judgment in the Fourth Amendment context, after first construing disputed historical facts in favor of the non-movant, the court must then ask how a reasonable officer would have perceived those historical facts. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815–16, 172 L.Ed.2d 565 (2009).

*Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 234 (5th Cir. 2009)

"In determining the reasonableness of the manner in which a seizure is effected, '[a court] must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' "*Scott v. Harris*, 550 U.S. 372, 383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quotation omitted). The "proper application" of this standard "requires careful attention to the facts and

circumstances of each particular case, including the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he [or she] is actively resisting arrest or attempting to evade

arrest by flight.*" Graham v Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d

443 (1989).

Both Defendants have stated that the amount of force used to arrest Plaintiff

was reasonable under the circumstances as Plaintiff was resisting arrest and

refused to comply with their commands and orders. Further, Plaintiff has admitted

to ignoring Defendants' instructions and refusing to comply with lawful orders.

Defendants both state that such force was used to ensure their personal safety and

the safety of their partner.  Both Defendants' Affidavits state that Plaintiff was

actively struggling.  Even assuming that Plaintiff incurred some form of permanent

injury from his arrest, Defendants actions in effectuating his arrest were not

objectively unreasonable, given the circumstances leading up to the use of force.

The right to make an arrest necessarily carries with it the right to use some degree

of force or threat to effect it.  *Graham,* 490 U.S. at 396.  Plaintiff's conviction

prevents him from successfully arguing that Defendants did not have the right to

arrest him.  In effectuating his arrest, Defendants were entitled to "exert such

physical force as [was] necessary to effect the arrest by overcoming the resistance he

encounter[ed]."  *Wallace v. Harber,* No. 91-7309, 988 F.2d 1213, 1993 WL 82379, *3

(5th Cir. 1993).

The Court's analysis requires consideration of the extent of Plaintiff's injuries

allegedly resulting from Defendants' conduct.  Plaintiff testified that he suffered a

black eye, cuts and scrapes on his elbows and knees, as a result of Defendants

actions.  Tr. of Omnibus Hearing [38-4] at pp. 26-29, 38, att. as Ex. "D" to Defs.'

Mot. [38].

When asked whether he sustained permanent injury, Plaintiff responded

that he suffered no broken bones, but had pain and suffering in "my back, like when

I work in the kitchen."  *Id*. at p. 27.   Plaintiff admitted that he had previous back

and neck injuries due to a car accident. Plaintiff testified that he was the driver of a

vehicle that "lost control of the car, and like, hit a ditch and flipped over a railroad

track." *Id*. at p. 28.  Plaintiff was treated at Biloxi Regional Hospital.  *Id*. at p. 29.

Plaintiff testified that on the night of his arrest and while he was in the

holding cell at the police station, he punched the glass  because he was upset. *Id*. at

p. 30.  Plaintiff testified that his hand was x-rayed while he was incarcerated in the

Harrison County Jail.   Plaintiff responded that these were the extent of his injuries

alleged against Defendants.  *Id*. at p. 31.   When asked whether he had any medical

treatment relating to his allegations against Defendants, Plaintiff responded that

he had not.  *Id*. at p. 32.

In the present case, Plaintiff has failed to proffer sufficient evidence in

support of the second element of the excessive force test because his injuries did not

result "directly and only from" the officers' use of force. The evidence is scant as to

the injuries Plaintiff sustained as a direct result of Defendants' conduct in

effectuating his arrest. The record reflects that he had a black eye and abrasions on

his elbows and knees. Plaintiff admits, however, and other portions of the record also reflect, that the additional conditions claimed by Plaintiff were the result of previous injuries he sustained in a car accident or that were self-inflicted. Therefore, Plaintiff's injury did not result "directly and only from" the Defendants' use of force. *Wells v. Bonner*, 45 F.3d 90, 96 (5th Cir. 1995)

"An arrest is, by definition, a confrontational affair and we have little doubt that many arrests involve some form of physical coercion. Most injuries that result from arrests, even if they are actionable, do not rise to the level of a constitutional violation . . ." *Raines v. City of Starkville*, 986 F.2d 1418 (5th Cir. 1993); *accord Wells v. Bonner*, 45 F.3d 90, 96 (5th Cir. 1995).

As stated above, the doctrine of qualified immunity shields from civil liability all but the plainly incompetent or those who knowingly violate the law. . . .  If the law at the time of a constitutional violation does not give the officer fair notice that his conduct is unlawful, the officer is immune from suit.  This standard thus protects an officer with a mistaken, yet reasonable, understanding of the law from the hazy border between excessive and acceptable force. *Manis v. Lawson*, 585 F.3d 839, 845-46 (5th Cir. 2009) (internal quotations and citations omitted.)

The Court concludes that Plaintiff has not established a genuine issue of material fact to show either injury of such character or objectively unreasonable excessive force so as to demonstrate that any reasonable officer would have realized that the force employed violated then clearly established constitutional limitations. Defendants actions were objectively reasonable in light of the clearly established

law at the time. As such, Defendants are entitled to qualified immunity on Plaintiff's excessive force claim.

### III.  CONCLUSION

Based upon the foregoing, Plaintiff's 28 U.S.C. § 1983 claims against the individual Defendants will be dismissed.  These claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), and the individual Defendants are further immune from these claims based upon qualified immunity. Plaintiff's § 1983 claim that Defendants seized him unlawfully and without probable cause will be dismissed.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [38] to Dismiss, or alternatively, for Summary Judgment pursuant to FED. R. CIV. P. 56 or Other Grounds, filed by Defendant officers of the Biloxi Police Department, Richard Hilliard and Brandon Franovich, is **GRANTED**.  All 28 U.S.C. § 1983 claims, alleged in the Complaint [1] filed by Plaintiff Shone Edward Handshaw, against Defendants Richard Hilliard and Brandon Franovich are dismissed.

**SO ORDERED AND ADJUDGED**, this the 4th day of September, 2015.


*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE